Good morning, Your Honors. I'm Ralph LaMontagne, representing the appellants, the Midwest parties in this matter. Your Honors, there are basically two questions before the Court this morning. First, does Article 20 of the Purchase Agreement eliminate the manufacturer's responsibility for the personal injury indemnity claims at issue in this litigation? And second, are those claims barred by the doctrine of federal preemption? It is our position that the answer to both questions is an unqualified no. As the Court is well aware, there have been numerous issues and sub-issues raised in this appeal, and I obviously don't have time this morning to discuss all of them, or even most of them. But with the Court's indulgence, I would like to highlight a few points. First, addressing the Article 20 question. It's our position that the language employed in Article 20 is clearly insufficient to sufficiently disclaim liability for personal injury claims under Texas law. It is significant that appellees tacitly concede that they must, but there is no language in Article 20 that specifically states that ultimate liability for personal injuries is being disclaimed. Counsel, under Texas law, that's what's called fair notice, right? Well, that's part of it. That's part of it. Now, fair notice requires that there be plain language saying personal injury is exempted, negligence is exempted. But that has to do with future negligence and the sale of services, I thought, not the sale of finished goods, as to which there can be no future negligence, because all negligence or product design defects have already been accomplished by the time the goods are sold. Now, how do you distinguish that? Well, Your Honor, I don't believe there's any Texas case that so holds. I mean, there are the court below tried to make that distinction and said, well, there's the sale of goods and there's the sale, there are services. But we pointed out in our reply brief that in one case, okay. Isn't there a case called OxyUSA v. Southwestern Energy Products? It was a Texas 2005 Texas appeal case which declines to extend fair notice requirements to indemnity agreements concerning past transactions. Are you familiar with that case? I recall the case name, Your Honor, but I don't recall that holding being there. And I would point out that we're not just talking about the express negligence doctrine per se. That is one of the many rules of strict construction under Texas law. And there are basic laws regarding exculpatory provisions and strict construction of exculpatory provisions. And I'm not aware of any case that says those rules of strict construction are out the window if we're dealing with the sale of goods. Now, maybe there's something I'm missing, but I'm not aware of that in the cases that I have reviewed and the cases that we cited. Well, only strict construction regarding express mention of personal injuries and negligence or whatever other common law duty is claimed to have been violated. Well, actually, the failure to mention personal injury per se probably doesn't technically even fall within the express negligence rule. It's a separate rule of construction under Texas law. The express negligence rule basically says if you are attempting to absolve yourself from negligence, you must use the word negligence, you must specifically state that in the body of the exculpatory provision. That's the fair notice rule in Texas. Well, the fair notice rule has two components. It's got a conspicuousness requirement, and we don't challenge that. And then the second requirement is the express negligence component. Do you say that consequential, special, or incidental damages cannot include personal injury damages? I'm not saying it cannot include it, Your Honor. I'm saying under the rules of construction that have been set forth in Texas where it must be specific that it is insufficient. Here, one can certainly liberally find a way to put personal injury into the term consequential damages. Similarly, in the express negligence area, there are a lot of cases that say all claims are covered and are released, all claims across the board. And one could certainly assume from that that that would include. Is this a personal injury claim? Yes, it is a personal injury claim, Your Honor. It is an indemnity claim for personal injuries, yes. But that's quite different. Midwest didn't get personally injured. No, no, certainly not. Right. So what they are seeking is indemnity for somebody else's, for money that they paid out. Absolutely. To somebody else because of personal injuries. Is that a personal injury claim? Well, I mean, I think it is. I mean, if you have a contact between the parties, you know, and let's say the plane had tipped over or something, and one of the executives of Midwest was in it and got injured or, you know, fell out of the sky, you know, something like that had happened, you could say, well, Midwest then has a claim perhaps against the manufacturer, and that's a personal injury claim, even though Midwest, I guess, again, Midwest is a corporation, right? It doesn't really have any body. But if it's officers or directors or, you know, somebody governing bodies, that's an injury. That's a physical injury to the corporation. That would be a personal injury claim by Midwest. But I don't see how a claim for indemnity for damages paid to somebody else is a personal injury claim. Well, it's essentially a pass-through, Your Honor. I'm sorry? It's a pass-through situation. That's what an indemnity claim is. Also a consequence of the personal injury claim. Well, it is a consequence, Your Honor. But, again, I think it's very important to look at some of the Texas cases. Well, I don't know why you're not answering me by saying that's right, and that kind of thing is not covered by the agreement. Well, it's certainly not covered. Regardless of whether we categorize this, Your Honor, as a personal injury claim or an indemnity claim based upon personal injury payments. Well, you've been talking as if it were an injury claim, as if Midwest were personally injured, and the question is, is this covered by the agreement? You're treating it as if it were a personal injury claim. I'm pointing out it's not a personal injury claim. I don't think it's a personal injury claim at all. I thought I used the language personal injury indemnity claim, Your Honor, and if I didn't, my apologies, because that's certainly what I meant to say if I did not say that. I'm not contending that this is a direct personal injury claim, per se. I'm saying that as a practical matter, I'm not sure that it's all that much different. I mean, the plaintiff could have sued and tried to sue. Well, if I were in your shoes, I would argue that it's very different, but you're not listening. I would be arguing that this is not a personal injury claim, and the kind of claim it is is not covered by the agreement, and therefore that the manufacturer is not protected from liability. But I don't want to make your argument for you. I don't think it is covered, Your Honor. Well, I know what your bottom line is. I'm sorry? I know what your bottom line is, but I was thinking I would never mind. You've got less than two minutes left. One other point I would make to the question that I received a moment ago about whether this has to be future negligence or past negligence. And I would point out, Your Honor, that I believe it's the Houston Lighting case was one of the many cases that has held that if you are attempting to seek protection from strict liability, you must also specifically list strict liability. Now, I'm not sure how you have a future strict liability situation. Typically, you will sell a product, and as you say, whatever negligence may be involved or whatever defect may be involved is going to be there at the time of sale. So I think that those cases, too, certainly support the position that we're not just talking about something in the future, that the rules for the exculpatory provisions are across the board. Do you want to say something about Federal preemption in Montalvo? Yes, Your Honor. Your Honor, very quickly, I don't think Montalvo said in any way, shape, or form that aviation product liability cases are preempted. The overwhelming number of cases to consider the matter have held the other way. We pointed those out in pages 41 and 42 of our brief. And I think most importantly, Congress has repeatedly made clear that it does not consider aviation product liability cases to be preempted. It did that in 1990 when it rejected GALSA, which was a bill to establish uniform Federal product liability standards in aviation cases. In that case, the Senate report said, and I'm quoting here, there is no special historical or constitutional precedent that would support national standards for aviation law. That's a quote. It said the same thing, essentially, in 1994 when it passed GARA, which is an 18-year statute of repose in aviation products cases. Do you agree that Judge Walker thought differently in Montalvo and he granted a motion of summary judgment for the manufacturer in that case based on seat configuration and the manufacturer and the plaintiffs didn't even bother to appeal that? That may be, Your Honor. I know that was not specifically considered by this Court. What I do know, however, is that that would indeed be a very, very radical change in the law in aviation products liability and would go directly against the congressional statements in GALSA and GARA and the overwhelming majority of cases that have specifically considered this issue. I suspect I'm over my time, Your Honor. You don't have to suspect. You can just see it. The red button tells you you are. Okay. Thank you, Your Honor. We'll hear from the other side. Good morning. My name is Arthur Wilner, and I'm here to represent the appellees. The essential question before the Court today is whether, insofar as the contract issue is concerned, two sophisticated commercial entities can freely come together and enter into an agreement in which they're prepared to allocate their risk and then be confident in knowing that the unambiguous and clear language that expressed their intent is going to be given effect. If it's unambiguous and clear. I don't think anybody argues that they can't. The question here is whether they did. And what is it that you point to in the agreement that you think helps you here? Why don't you point me to a provision? I can point to Article 20.1. Let me get to it. 20.1. Article 20.1 begins with the parties coming together and stating that they expressly recognize that there is a commercial need to define an apportioned liability. The district court judge reviewed this language and I believe correctly concluded. Okay. Point to me the language. Enough wind-up. Why don't you just, next thing you say, quote language from here that you're relying on? Your Honor, the key language is what I just said, that the parties expressly recognize the commercial need. Now, that is not helping you any because their recognition of that fact doesn't do anything, right? It has no legally applicable effect, right? Well, Your Honor, I believe that it does. Point me the language that you are relying on, the language that actually absolves your liability. Further on in Paragraph 20.1, the contract states that the terms of this article are an essential basis of this bargain and have been discussed, understood, and agreed to between the parties as a fundamental consideration. Now, that doesn't help you either. You're still doing a wind-up. You're driving up to the house. Get us in the house. Okay. Just point to the language that actually absolves your liability. The language that actually absolves us of liability is in Paragraph 20.3, which states that purchaser understands that except to the extent expressly stated in this agreement, seller shall not under any circumstances or under any theory of liability, including negligence, have any liability to purchaser, to purchaser's customers or users or to anyone else, for consequential, special, and or incidental damages, including but not limited to lost revenue or loss of use, and purchaser expressly waives any and all rights which it may have otherwise had to seek and or to recover such damages. That is the heart of the agreement. And specifically which words cover this claim? Is it consequential, special, or incidental? I believe it would be consequential, Your Honor. What we're dealing with here is, as Your Honor pointed out, not strictly a personal injury case. Rather, it's an indemnity claim brought by the airline for money that it paid to satisfy somebody else's claim. And so it paid this money. That's not what consequential damages are. Consequential damages are, I buy a plane, it gets into an accident, and then I can't service my customers because I don't have a plane, so I have to lease another plane to run my business. That's consequential damages. If you wanted to say damages, if you wanted to say any damages, you would have stricken the words consequential, special, or incidental. And if you had stricken those three restrictive words, you would have gotten where you want to go. But it seems to me you have to fall into one of those three categories. And I don't see where a physical injury is either consequential, special, or incidental. I've never heard it used in the law that way in any case. Do you have any case where personal injuries are referred to as consequential, special, or incidental? It's, Your Honor, it's possible that a plaintiff's damages. Do you have a case like that? That refers to personal injury damages as consequential, special, or incidental damages? No, I do not. So you lose. That's under the case, isn't it? I don't believe so, Your Honor. Why not? Because we're not dealing with personal injury damages here. We're dealing with monetary damages that were paid by the airline as a consequence of its settlement with the plaintiffs. Okay. Do you have any case that refers to that as being consequential, incidental, or special damages? No, Your Honor, but it's my understanding of consequences. Well, see, you could have gotten rid of those three words. You'd be fine. Does it say anything about indemnity to other, is there any specific provision in this thing that says, that absolves your client of indemnity claims? There's no specific reference to indemnity claims. But it does make reference to both the buyer and the buyer's customers. So when it talks about damages, the kind of damages involved, it not only talks about the kind of damages involved vis-a-vis the buyer, but also the buyer's customers. And clearly, as far as the buyer's customers are concerned, this was a personal injury claim. That's correct. Okay. So as far as defining the universe of the kind of damage that happened, the damages suffered by the customers are not consequential, special, or incidental, right? That's correct. I don't believe that the personal injury damages, for example. So if, for example, you would not be absolved of these claims if you got sued by the, or maybe you did get sued by the plaintiff, by the passenger, right? We were sued by the passenger, and Your Honor is correct. I do not believe that we would be absolved by virtue of this agreement in terms of our liability to the passenger. Because the passenger isn't a party to our agreement. That's exactly right. So by putting it in here, right, the only thing this can possibly govern is your relationship with the buyer. That's correct. So insofar as you're referencing the passengers, this must be defining the kind of injury that the passengers suffer for which your company would not be liable, vis-à-vis the manufacturers. For example, if the passenger sued because they were in the hospital and then couldn't attend a business meeting, you wouldn't be liable for that, or you could get indemnity from the airline company for that, right? I would think so. So I don't see where you fit into any of this. Well, I believe we fit into consequential damages because we're not the damages that we're dealing with here are not strictly personal injury damages that were suffered by the passenger. But the passengers' consequential damages would be as a result of the airplane not flying, the passenger missed a business meeting at which he would have made $1,000. That would be a consequential damage for a passenger. Correct. But a personal injury would be a consequential damage because you are indemnifying it? The – what we're dealing with here are consequential damages because we're talking about the monetary loss suffered by the airline as a consequence of having to pay its passenger in settlement of its claim. But in answer to Chief Judge Kaczynski's question, we have – you've been unable to find any cases which define consequential damage to include indemnity for personal injury, correct? That's correct. But I – my position is that as a general understanding of what consequential damages consist of, that those sort of damages that we're dealing with here would fall within the framework of consequential damages. I think my remedies professor would be shaking his head. What about the Federal preemption point? In terms of the Federal preemption point, we – it's our position that Montalvo represented a significant change in the law of field preemption in the Ninth Circuit. The district court judge, in reviewing the preemption argument, rejected it essentially out of hand, observing that we had relied on the Montalvo – on the Abdullah case out of the Third Circuit, but observed that Abdullah was not the law in the Ninth Circuit and was just a minority view, and so he was not going to follow it. In October or November of last year, the Ninth Circuit specifically adopted Abdullah. But in whole scale? Lock, stock and barrel. And so the law in this circuit is the law that was expressed in Abdullah in the Third Circuit. And the notion that when the Montalvo court said that field preemption applies to aviation safety, and that was Congress's intent, and that you may not – a litigant may not rely upon State law to either vary or supplement the regulations that the FAA and Congress have imposed, we believe that the Ninth Circuit panel that reached that ruling in Montalvo and came up with that language made its intent quite clear. Actually, in the plane, when you get out of the plane, is it a drop-down door? That's correct. Was there just one rail on the one side, and was the other side open? That's correct, Your Honor. And she fell out the other side? She lost her balance. She happened to be holding her young son in her left arm. The handrail was on the left side, and she sort of, to regain her balance, kind of hopped off to the right and fell to her knees, and she was injured. And strategically, the airline didn't cross-complain and decide to wait later to then sue for indemnification? Is that what happened? The my recollection is that before the case was settled by the airline, it did file a third-party complaint against my clients. The plaintiffs then brought their own direct action against my clients as well. Oh, what happened there? Or is that not before us? It's not before us, but the case very quickly was settled by the airline, and then the airline proceeded with its third-party indemnity claim against my clients. No, I think the question was what happened to the lawsuit between plaintiffs and your client. When the airline settled its case, the agreement was to dismiss all defendants, and so the plaintiff dismissed my clients as well. Oh, I see, including you. Including me. And you were not a part of the settlement? Quite frankly, Your Honor, we weren't invited to the settlement conference, which is something that still confuses me. The answer is you were not a part of the settlement. That's correct. But you were a beneficiary of the settlement in the sense that you got dismissed out. That's correct. In California, you can settle, have a good-faith settlement, and that bars third-party rights on certain circumstances. Texas law is different, or not? I'm not sure that this issue would have been governed by Texas law, but it was agreed that at the time that the airline could proceed with its indemnity claim. Okay. Thank you. You are out of time, but we'll give you a minute for rebuttal. Just a couple things, Your Honor. Going back to the consequential damages, I think it is important that Article 20.3 gives two examples of what consequential damages are, and that is loss revenues and loss of use, and that falls in line with exactly what you were saying earlier, that that is the intent behind the utilization of the words consequential damages here. Secondly, as far as the ---- Isn't that a rule of construction that has a Latin name, like a eusdem? Do we follow that in the Ninth Circuit? You must have gone to political school. They follow it in Texas, Your Honor, and I was going to try and pronounce it, too, but I didn't have the guts to do it. It means if you mention some words in description, that gives you the content of what including means. Correct. That is Texas law, and we cited a few cases in our brief to that effect, Your Honor, in Texas. You know, this question is the kind of case that you guys should be able to settle. They got dismissed out of the case for nothing based on your settlement with the plaintiffs? They did, Your Honor, and the settlement of this case ---- It wasn't very definite. It indicated my involvement, but my recollection of the facts was ---- Not very definite. My lawyer did the settlement and didn't show up, but I could be wrong on that. Yeah, but you don't have to let them off. I mean, you know, you can settle your part of the case and let them on the hook. There wasn't very deft lawyering on your predecessor's part, essentially. Well, Your Honor, the problem is we're a common carrier, and there's an enhanced standard of care for a common carrier. Well, you can settle yourself out, but why do you have to let them on the hook? They're jointly and separately liable, Your Honor. We can't ---- we don't have the option of saying we only think we're 40 percent liable, Mr. Plaintiff, so we're only giving you 40 percent. They're allowed to come after us 100 percent, and that's why we need these indemnity claims to, you know, to be able to go back against them and say, okay, now you pay your share. And this ---- that was cut off. Mr. Lamontagne, answer why we shouldn't have to follow the following language from Abdullah. Because the legislative history ---- and I am not endorsing legislative history. I'm reading. Because the legislative history of the FAA and its judicial interpretation indicate that Congress's intent was to federally regulate aviation safety, we find that any, in italics, state or territorial standards of care relating to aviation safety are to be federally preempted. Isn't that now the law of the Ninth Circuit since we bought Abdullah, Lock, Stock and Barrel? Well, you bought ---- you bought Abdullah in a particular context, Your Honor, and no, I don't think that you are now ---- you are now bound by every single word that's contained in the Abdullah opinion. And as I recall the timing on Abdullah as well, I believe that was a 1991 case. That preceded GARA by three years. We adopt the Third Circuit's broad historical approach to hold that federal law generally establishes the applicable standards of care in the field of aviation safety. That's what we said in Montalvo. Right. And there are some cases, Your Honor, I believe we cited them in our brief, that have said, well, okay, aviation safety. After Montalvo? Not after Montalvo, no. I'm not aware of any post-Montalvo cases on this. All I would say, Your Honor, is that if this Court is going to interpret Montalvo that broadly, it is running up against a large wall of congressional intent. So what's new about that in the Ninth Circuit? Pardon me? So what's new about that in the Ninth Circuit? No comment, Your Honor. One last comment that I would make, though, Your Honor, and that is even if there is preemption here, that doesn't end this case. That doesn't mean that appellees win. It simply means that a federal standard of care applies. And you think we don't know that? Oh, I think you do, Your Honor. So why are you taking time that you don't have to? They don't know that. I just want to make sure that they know that as well as you knowing that, Your Honor. We have cited to two regulations. We've been talking about the contract claims. We wouldn't be talking about that if we thought. Anyway, you know, have you guys tried to settle this case? No, Your Honor. Yeah, I think you need to try to settle this case. You know a little bit more now after having had all argument and counsels here. I think you should go out and have a cup of coffee and some very nice restaurants here in Pasadena. I recommend Lucky Boys in the corner of California. I have been there several times, Your Honor. Okay. Get a pastrami sandwich or a breakfast burrito and a cup of coffee, and you gentlemen can figure it out. This is the kind of case, it seems to me, should be capable of settlement among reasonable lawyers, which both of you seem to be. What do you think? One's not smiling. Well, he might be smiling less if he gets our opinion, so maybe this is a good time to. This is Mr. Are you Mr. Montagne? I'm La Montagne, Yes, Your Honor. Are you willing to do that? I'm willing to talk to anyone, Your Honor. How about you, Mr. Wilner? We're always willing to discuss it. It will be a lot worse after. It could be a lot worse after you get something from us. You've heard our questions. I don't know what we're going to do, but there's at least some doubt as to the outcome, which is now a perfect time. Why don't we defer submission on this for a week to see whether you gentlemen think you want to pass the settlement? If a week from now you think that you need more time, you can send a letter and we'll defer submission further. If not, a week from today the case will be submitted and you will get an answer very quickly after that. I might also suggest we have a very good mediation office. They are very successful in settling all sorts of cases. This is exactly the kind of case that it's only money and this is not a copyright claim or people say it was my music, they stole my music. We're only talking money here. This should be capable of resolution among rational parties, which I think both of your parties are with fine lawyers, which I think both of you are. So I want you to take a week to think about this. Starting today, you're going to go off and chat? Yes? Absolutely. Okay. I think you should seriously consider. Just think about the cost of your client if this case continues. All that money could go towards a settlement, right? Okay. We will defer submission for a week. And if you want more time, just send us a note, send us a letter from one of the counsels saying you need more time and how much you think you need if you think you're on the path to settlement. And if you would like to have the benefit of a mediation office, you can inquire with the clerk's office and get a number of our circuit mediators. They're very good. They can be exceedingly helpful. And they've settled all sorts of cases, including criminal cases, death penalty cases. This is not death penalty. This is piddling stuff. I know it's important to your clients, but in the great scheme of things, it's the kind of thing that can be settled.  Thank you, Your Honor. Okay. Thank you, counsel, both of you, for a very fine argument. You both did a good job. And that's why I have faith that you can take it that one step further and get the case done. Okay. Submission deferred on Midwest Express. Let's next hear from. Oh, I see. This is. All right. That's right. Okay. So we have one more case on the calendar that was moved to Wednesday. We did hear the case on Wednesday. That's right. So the next case to be argued is oral assistance.
judges: Kozinski, Bea, Huff